UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARLINE BANKS,

Plaintiff,

Civil No. 04-70933
Hon. John Feikens

v.

ANTHONY J. PRINCIPI, Secretary
of the Department of Veterans Affairs,

Defendant.

_________________________________/

**OPINION AND ORDER**

## I. INTRODUCTION

Defendant moves for summary judgment on Plaintiff's claims of age and disability discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. For the reasons that follow, I GRANT Defendant's motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff Earline Banks is 61 years old, and in June 1991, she began employment with the Department of Veterans Affairs ("DVA") for the third time as a nurse.[1] (Resp. at 2; Def.'s Mot. at 2; citing Ex. 2 (Pl.'s Dep.) at 4.) Plaintiff suffers from diabetes, cataracts with diabetic neuropathy, and hypertension. Id. at 2. Plaintiff became a relief supervisor and a night shift

[1] In 1980, Plaintiff began her employment with DVA, but voluntarily resigned after about two years. (Def.s' Mot. at 2; citing Ex. 2 at 5.) Plaintiff subsequently returned to the DVA and again voluntarily resigned after about two years. Id.

nursing supervisor in 1995 and 1998, respectively. (Resp. at 2.) Plaintiff states that she coordinated her leave schedule with the other night shift nursing supervisor, Joanne Jackson. (Resp. at 2; Def.s' Mot. at 2; Ex. 2 at 6-7.) In 1999, Anita Lord, Chief of the Nursing Section, became Plaintiff's immediate supervisor. (Def.s' Mot. at 2; citing Ex. 3 (Lord's Dep.) at 5.) In 2001, the DVA hired Leslie Wiggins as the Associate Director of Patient Care Services, and Wiggins later became Plaintiff's immediate supervisor. Id. at 2; citing Ex. 4 (Wiggins's Dep.) at 6. In February 2001, Plaintiff suffered a stroke. (Resp. at 2.) Plaintiff alleges three instances of discrimination: a denial of work scheduling privileges, an AWOL charge, and a reassignment to another nursing unit.

***1. Work Scheduling Privileges***

Plaintiff and the other nursing supervisors arranged their own work schedules. (Def.'s Mot. at 2; citing Ex. 2 at 8-9, 11-12, Ex. 4 at 8.) As a group, the supervisors determined when to take holiday and vacation time. Id. at 2; citing Ex. 2 at 8-9, 11-12. The supervisors normally resolved scheduling conflicts among themselves. Id. at 2. When the supervisors were unable to agree on a schedule, Wiggins would intervene and determine who would work a particular shift. Id. at 2; citing Ex. 4 at 10-11.

In June 2002, the DVA reassigned Plaintiff's co-worker Jackson to a different position, and Jackson was replaced by Pat Smith, who Plaintiff claims was younger than Plaintiff. (Def.s' Mot. at 3; citing Ex. 2 at 9, 12-16.) Plaintiff alleges that after Smith began, Plaintiff changed her own leave schedule to "make sure there was adequate coverage." (Resp. at 2.) Plaintiff stated that with the exception of some dates on which Plaintiff had something planned, she did not mind altering her work schedule. (Def.s' Mot. at 3; citing Ex. 2 at 13; Resp. at 2.) Plaintiff

claims that Wiggins told her that a clinical nurse would cover for Plaintiff on those dates when Plaintiff had something planned. (Def.s' Mot. at 3; citing Ex. 2 at 13.) On June 6, 2002, Plaintiff alleges that a co-worker complained about Plaintiff's tardiness and scheduling problems. Id. at 3; citing Ex. 1 at 4. On June 7, 2002, Sandy Thomas and Wiggins met with Plaintiff. Id. at 3; citing Ex. 2 at 10, 14. Plaintiff claims Thomas and Wiggins changed Plaintiff's schedule to work a holiday weekend when Plaintiff already had something planned and required Plaintiff to submit all future leave requests in writing. (Resp. at 2; citing Ex. A at 11, 13.) Plaintiff alleges her schedule was changed to accommodate Smith, the younger supervisor. (Resp. at 6; citing Ex. A at 14-16.) Additionally Plaintiff states that Wiggins told Plaintiff she would no longer be allowed to set her own work schedule, although the parties dispute whether this limitation was imposed upon Plaintiff individually or made as a general warning to the group of supervising nurses. (Resp. at Ex. A at 10-11; Def.s' Mot. at Ex. 4 at 10-11.) Plaintiff claims that other younger supervisors continued to be allowed to self-schedule. (Resp. at 6; citing Ex. A at 9-16.)

***2. The AWOL Charge (July 10, 2002 – July 19, 2002)***

On July 10, 2002, Plaintiff was scheduled to work the midnight shift. (Def.s' Mot. at 2; citing Ex. 2 at 17.) On July 9, 2002, at 4:00 a.m., Plaintiff called another nursing supervisor, Dorothy Brown, and informed Brown she would be taking extended sick leave. Id. at 3; citing Ex. 2 at 17. Brown said that she would relay Plaintiff's message to Wiggins, but advised Plaintiff to request time off from Wiggins herself. Id. at 3; citing Ex. 5 at 1. Plaintiff acknowledges that she was required to ask for and receive Wiggins's approval for an extended leave. (Resp. at 3.)

After receiving Brown's message, Wiggins claims she attempted to contact Plaintiff for at least three days to determine why Plaintiff was requesting time off. (Def.s' Mot. at 4; citing Ex. 4 at 13-14.) Plaintiff allegedly did not return Wiggins's phone calls. Id. Plaintiff at some point did meet with Wiggins to request extended leave, although it is unclear when this occurred. Id.; Resp. at 3. Plaintiff gave Wiggins a note from her physician, Dr. Gerald Loomus, dated July 8, 2002, stating, "Ms. Banks because of medical problems has been advised to take leave for four to six week[s]." (Def.s' Mot. at 4; citing Ex. 1 (Medical Info.) at 66.) Wiggins told Plaintiff that she needed additional information because the note by itself was insufficient to grant leave. Id. at 4; citing Ex. 2 at 20; Resp at 3.

Plaintiff gave Wiggins a July 16, 2002 doctor's certification, describing Plaintiff's condition as "stress reaction" and "diabetes," and stating that Plaintiff was going to have cataract surgery and would be unable to work for four to six weeks. (Def.'s Mot. at 4; citing Ex. 1 (Certification) at 69-71.) Plaintiff also produced a July 16, 2002 letter written by Plaintiff to Wiggins and the Resources Management Chief, requesting family medical leave from July 10, 2002, through August 22, 2002. Id. at 4; citing Ex. 1 (Banks's letter) at 72. Plaintiff was approved for a medical leave from July 19, 2002, through August 22, 2002. Id. at 4; citing Ex. 1 (Lord's letter) at 64; Resp. at 3. Wiggins claims that the doctor's certification provided support for the July 19 through August 22 medical leave, but did not excuse Plaintiff's absence from July 10 through July 19. (Def.'s Mot. at 4; citing Ex. 4 at 13-15.) Plaintiff was marked absent without leave ("AWOL") for July 10 through July 19. Id.; Resp. at 3.

### *3. DVA's Reassignment of Plaintiff*

On August 16, 2002, Wiggins sent Plaintiff a letter stating that "[b]ased upon [their] prior

conversation, [Plaintiff] will be reassigned upon [her] return to duty." (Def.s' Mot. at Ex. 1 (Wiggins's Letter) at 63.) The letter stated that Plaintiff would be reassigned to Ward A5, South, Nursing Home Care Unit, day shift with rotation to off tours, with an eight percent retention allowance. Id. at 4; citing Ex. 1 at 63. This reassignment changed Plaintiff's job title, but permitted Plaintiff to earn more money. Id. at 4; citing Ex. 7 (Notice of Personnel Action) at 1, Ex. 8 (Notice of Personnel Action) at 1. On August 19, 2002, Plaintiff requested a leave extension until September 20, 2002. Id. at 3. Plaintiff's employment with the DVA ended on November 29, 2003, when her disability retirement was approved. (Am. Compl. ¶ 7; Def.'s (First) Mot. for Summ. J. at Ex. 1 (Adams Decl.) ¶ 6.) On March 12, 2004, Plaintiff filed her Complaint.

## III.   ANALYSIS

### A.   Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted); Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a

claim to survive a motion for summary judgment, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the non-moving party, the motion should be granted. Id. at 587. The trial court has some discretion to determine whether the respondent's claim is plausible. Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1087 (6th Cir. 1996); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

**B.   Standard to Review an Age and/or a Disability Claim**

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a).

Under both the ADEA and the Rehabilitation Act, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would give rise to an inference of discriminatory treatment. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004) (ADEA); DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004) (Rehabilitation Act). In the absence of direct evidence, the Sixth Circuit analyzes ADEA and Rehabilitation Act claims based on circumstantial evidence using the same burden-shifting framework as for Title VII claims, announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003) (ADEA); Burns v. City of Columbus,

91 F.3d 836, 842 & n.8 (6th Cir. 1996) (Rehabilitation Act). Because Plaintiff offers no direct evidence of age or disability discrimination,[2] I analyze these claims under the McDonnell Douglas burden-shifting framework used for circumstantial evidence.

Under McDonnell Douglas, a plaintiff who presents circumstantial evidence to demonstrate age or disability discrimination in employment first must establish a prima facie case of discrimination, which creates a rebuttable presumption of discrimination. Grosjean, 349 F.3d at 335; Burns, 91 F.3d at 843. The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for committing the challenged action. Id. If the defendant meets this burden, then the burden shifts back to the plaintiff to show that the defendant's reason is actually a pretext to disguise unlawful discrimination. Id.

## C. Plaintiff's Age Discrimination Claim

### *1. Prima Facie Case of Age Discrimination*

---

[2] Even Plaintiff is uncertain whether Defendant's actions were motivated specifically by Plaintiff's age or physical impairments.

> Q. Ms. Banks, in terms of the AWOL issue, why do you believe that you were charged AWOL during that period, why do you believe that it was related to your age?
>
> A. Well, necessarily, I don't know if that is related to my age. It's just that I felt, [sic] think that was a wrong thing to do, since I had annual leave. [...]
>
> Q. I will ask you again, why do you believe that these issues happened to you based on your disability, and do the best that you can, to respond to that, Ms. Banks?
>
> A. I am not sure if she did these things based on my disability. I'm not sure of that.

(Resp. at Ex. A (Pl.'s Dep.) at 23, 51.)

A plaintiff establishes a prima facie case of age discrimination under the ADEA by showing: "(1) he was a member of the protected class (age 40 to 70); (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated worse than a younger person." Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1390 (6th Cir. 1993). For reasons explained below, Plaintiff fails to show that she experienced an adverse employment action, and thus has not established a prima facie case of age discrimination.

The Sixth Circuit defines an adverse employment action as a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996), quoted in Mitchell v. Vanderbilt Univ., 389 F.3d at 182. A materially adverse change in employment terms or conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. Examples of a materially adverse change include "[a] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities ...." Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993), quoted in Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). Plaintiff is dissatisfied with several of Defendant's actions regarding her employment, none of which rise to the level of an adverse employment action. Specifically, Plaintiff alleges that: (i) her schedule was changed to work a holiday weekend and she was denied self-scheduling privileges; (ii) Wiggins marked Plaintiff AWOL for the period of July 10 through July 19, 2002; and (iii) Plaintiff was reassigned to a different nursing unit. (Resp. at 2-3.)

   *(i).   Plaintiff's Scheduling Complaints*

Plaintiff complains that Wiggins required her to work a holiday weekend to accommodate supervisor Smith, who Plaintiff believes is younger. (Resp. at 6; citing Ex. A at 13-16.)  Plaintiff also claims Wiggins required her to submit all future leave requests in writing and took away Plaintiff's ability to set her own work schedule, whereas younger supervising nurses were not limited as such. (Resp. at 6; citing Ex. A at 9-16.)  In an unreported opinion, the Sixth Circuit indicates that scheduling matters typically are not adverse employment actions. Johnson v. UPS, 117 Fed. Appx. 444, 450 (6th Cir. 2004).[3]  "Case law indicates that, absent changes in salary or the number of hours of work, scheduling matters would not normally classify as potential adverse employment actions."  Id. (citing Kocsis, 97 F.3d at 885; Yates, 819 F.2d at 638).  Plaintiff offers no evidence of a reduction in salary or scheduled work hours, and thus fails to allege an adverse employment action regarding scheduling.

*(ii).  Plaintiff's AWOL Charge*

Wiggins marked Plaintiff AWOL for the period of July 10 through July 19, 2002, allegedly for failure to produce documentation sufficient to grant medical leave for that period. Id. at Ex. 4 at 14-16; Resp. at 3.  It is questionable whether Plaintiff's designation as AWOL is an adverse employment action.  Wiggins testified that Plaintiff was not disciplined for being AWOL, and neither party offers evidence that Plaintiff experienced any detriment resulting from the AWOL designation in her employment record. (Def.'s Mot. at Ex. 4 at 15.)

An AWOL charge seems comparable to a performance evaluation, which the Sixth

---

[3]Johnson was a case alleging race discrimination in employment under Title VII, but is instructive in the case at hand given the similar analyses required for ADEA, Rehabilitation Act, and Title VII claims.  See Kocsis, 97 F.3d at 885 (using Title VII and ADEA cases to determine what is an "adverse employment action" in an Americans with Disabilities Act ("ADA") case).

Circuit has discussed. Mid-range or even negative performance evaluations, the Sixth Circuit said, are not usually treated as adverse employment actions. Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Id. In an unreported decision, the Sixth Circuit distinguished Primes in finding that a negative performance evaluation was actionable where the plaintiff offered evidence that the negative evaluation prevented him from being promoted, thus affecting the terms or conditions of his employment. Byrd v. Stone, 2000 U.S. App. LEXIS 441 (6th Cir. 2000). Therefore, because Plaintiff offers no evidence of any detriment she experienced due to the AWOL charge, and fails to explain how her terms or conditions of employment were affected, Plaintiff has not shown how the AWOL charge amounts to an adverse employment action.

Even if the AWOL charge could be considered actionable, Plaintiff fails to establish the fourth element of a prima facie case of age discrimination because she has not shown that she was treated differently than a similarly-situated younger employee. The Sixth Circuit states that a plaintiff must show

> that the 'comparables' are similarly-situated *in all respects*. Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). Plaintiff fails to identify any comparable employee who engaged in similar conduct when requesting leave, but was not marked AWOL. Thus Plaintiff has not established a prima facie case that the

AWOL charge is attributable to her age.

*(iii). Plaintiff's Reassignment*

On August 16, 2002, Wiggins sent Plaintiff a letter stating that upon Plaintiff's return to duty, Plaintiff would be reassigned to Ward A5, South, Nursing Home Care Unit. (Def.'s Mot. at Ex. 1 (Wiggins' Letter) at 63.) The Sixth Circuit has held that reassignments without changes in salary or work hours usually are not considered adverse employment actions. Kocsis, 97 F.3d at 885 (citing Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987)). Specifically in Kocsis, the Court found no adverse employment action where a supervisory nurse was transferred to a unit nurse position absent a decrease in salary or modification of job duties. Id. at 886-87. Similarly in the case at hand, Plaintiff continued to perform nursing duties in her new position, and in fact was eligible to receive an eight percent retention allowance as a staff nurse. (Def.'s Mot. at Ex. 1 at 63.) Thus Plaintiff fails to show that her reassignment was an adverse employment action.

Because Plaintiff failed to establish a prima facie case of age discrimination, I GRANT Defendant's Motion for Summary Judgment with respect to Plaintiff's age discrimination claim.

**D. Plaintiff's Disability Discrimination Claim**

***1. Prima Facie Case of Disability Discrimination***

To establish a prima facie case under the Rehabilitation Act, a plaintiff must show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." DiCarlo v. Potter, 358 F.3d

408, 418 (6th Cir. 2004) (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996)).  A plaintiff must also establish that the defendant is a recipient of federal funding. Doherty v. S. Coll. of Optometry, 862 F.2d 570, 573 (6th Cir. 1988).

Plaintiff's brief indicates that Plaintiff's Rehabilitation Act claim is based solely on her reassignment to another nursing unit.  See Resp. at 7-8.  The EEOC decision, however, describes Plaintiff's disability claim as based on her scheduling problems and the AWOL charge, in addition to her reassignment.  Earline Banks v. Sec'y, Dep't of Veterans Affairs, EEOC No. 210-2003-0408X, at 2 (Dec. 16, 2003).  Even assuming Plaintiff alleges disability discrimination based on all three grounds (scheduling, AWOL charge, and reassignment), Plaintiff has not established a prima facie case under the Rehabilitation Act for the same reasons stated in my prior discussion of her ADEA claim.  Plaintiff's scheduling problems, AWOL charge, and reassignment do not constitute adverse employment actions.  Johnson, 117 Fed. Appx. at 450; Kocsis, 97 F.3d at 885; Primes, 190 F.3d at 767.  Hence, Plaintiff fails to set forth a prima facie case under the Rehabilitation Act, and I GRANT Defendant's Motion for Summary Judgment with respect to Plaintiff's disability discrimination claim.

## IV. CONCLUSION

For the aforementioned reasons, I GRANT Defendant's Motion for Summary Judgment in its entirety, and I decline jurisdiction over the remaining state law claim.

**IT IS SO ORDERED.**

Date: September 13, 2005

s/John Feikens
United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on September 13, 2005, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager